UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MICROFIBRES, INC. and HARTFORD FIBRES, LTD., Plaintiffs, | : | |
| v. | : | C.A. No. 04-21-T |
| SQUIRES HIGHTECH CORPORATION, Defendant. | : | |

**DECLARATION OF JAMES FULKS**

I, James Fulks, hereby declare and state as follows:

1. I live in East Greenwich, Rhode Island. I am Executive Vice President of Microfibres, Inc., the plaintiff in this case. I have personal knowledge of the facts set forth below.

2. I have attached to this Declaration true and accurate copies of certain documents generated in the course of Microfibres' dealings with the defendant in this case, Squires High Tech Corporation ("Squires"). Squires purchased goods from Microfibres during 2001 and 2002, but has never paid for those goods. The documents attached to this declaration reflect contacts between Squires and the State of Rhode Island.

3. Exhibit A is a memorandum from Microfibres' Bill Reading to Jim McCulloch dated July 8, 1999 documenting a meeting that occurred with Squires on August 2, 1999 in Rhode Island. This meeting led to the transactions for which Microfibres has sued in this case.

4. Exhibit B is a memorandum from Microfibres' Maureen Owen to Squires dated September 4, 2002. The memorandum documents a meeting held with Squires in Rhode Island on September 3, 2002.

5. Exhibit C is a memorandum by Microfibres' Jim McCulloch documenting a telephone call from Squires to Microfibres in Rhode Island on December 3, 2002.

6. Exhibit D is an email from Squires to me, in Rhode Island, dated October 10, 2001 in which Squires submitted a proposed sales agreement.

7. Exhibit E is an email from Squires to Microfibres' Maureen Owen, in Rhode Island, dated June 5, 2003.

8. Exhibit F is a fax transmitted form Squires to Microfibres, in Rhode Island, on September 6, 2002.

9. Exhibit G is a fax transmitted from Squires to Microfibres, in Rhode Island, on September 4, 2002.

10. Exhibit H is an email sent from Squires to me, in Rhode Island, on November 1, 2001.

11. Exhibit I is an email sent from Squires to me, in Rhode Island, on September 28, 2001.

12. Exhibit J is a letter sent from Squires to Microfibres, in Rhode Island, on January 3, 2001. The letter confirms a meeting that occurred with Squires in Rhode Island on January 4, 2001.

I declare that the foregoing is true and correct to the best of my knowledge and belief. Executed on ~~July~~ 3, 2005 in Pawtucket, Rhode Island.
August

James R Fulks

James Fulks

Squires file

MEMO

July 8, 1999

TO: Jim McCulloch

COPY TO: Jim Fulks
Steve Trastelis
Pierre Hanet
Dave Morrison
Bruce Campbell

FROM: Bill Reading

SUBJECT: Squires Hightech

I spoke with Bill Squires, Jr., yesterday to set up a meeting for him and me to get together to address how we can grow our business together.

Bill Jr. and Bill Sr. would like to meet at our Pawtucket office here on T~~hursday, July 22,~~ and they have specifically asked if you and Dave Morrison could be available on that date, as they would like to meet you both. Is this date okay?

Squires seems intent, for whatever reasons, on moving more of their business to us. However, they would like our meeting to be somewhat secretive, as there is apparently some sensitivity with their current supplier who reportedly has an employee that has a spouse that works for us at Microfibres. I am personally not familiar with this situation, but you may be.

WSR:ak

7/21 TO: Jim McCulloch

another meeting 8-2-99

The Squires meeting here is confirmed for Monday August 2nd @ 8:30 A.M.

Bill

cc David Morrison

[redacted]

Microfibres®

MAUREEN P. OWEN
Director of Business Development
Specialty Products Division

September 4, 2002

Mr. William J. Squires
Mr. William T. Squires
Squires Hightech Corp.
433 Meadow Street
Fairfield, CT 06430

meeting held at RI office

Dear Bills:

It was good to see you yesterday. Thanks for taking the time to meet with Jim McCulloch, Jim Fulks and me. This letter is to confirm the points agreed upon yesterday.

#1. Squires will immediately secure Microfibres in the second position behind Webster Bank on accounts receivable.

#2. Squires will provide audited financial statements for the last fiscal year and unaudited financials for the last six months. Those statements will be provided no later than September 4, 2002.

#3. Squires will pay Microfibres $150-200,000 of the outstanding balance owed within the next ninety (90) days. In the event that the bank is paid off, Microfibres will receive first secured position on accounts receivable until the $200,000 is paid.

#4. The remaining outstanding balance will be paid according to a mutually acceptable payment plan to be determined.

Good luck with your restructuring. We believe in the hunting business and hope to continue to sell into this market.

Regards,

Maureen P. Owen

MPO:ak
Cc: James R. McCulloch
James R. Fulks
Mary Ann Beirne

[redacted]

Microfibres, Inc. *One Moshassuck Street, P.O. Box 1208, Pawtucket, RI 02862-1208 TEL. (401) 725-4883 FAX (401) 722-8520*

Microfibres

## TECHNICAL SERVICES

**1125 MAIN STREET**
**PAWTUCKET, RI 02860**
Tel:(401) 725-4883
Fax: (401) 729-4894
www.microfibres.com

# Fax

| | | | |
|---|---|---|---|
| **To:** | Jeff Laws | **From:** | Jim Fulks |
| **Fax:** | | **Pages:** | (Including Coversheet) 02 |
| **Phone:** | | **Date:** | September 5, 2002 |
| **Re:** | Squires letter | **CC:** | |

☐ **Urgent** ☑ **For Review** ☐ **Please Comment** ☑ **Please Reply** ☐ **Please Recycle**

For your information.

Jim

☐ Confidential

br

* * * Transmission Result Report(MemoryTX) ( Sep. 5. 2002 12:02PM ) * * *

1)
2)

Date/Time: Sep. 5. 2002 12:01PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 3513 | Memory TX | JEFF LAWS | P. 2 | OK | |

Reason for error
E.1) Hang up or line fail
E.2) Busy
E.3) No answer
E.4) No facsimile connection

Microfibres®

**TECHNICAL SERVICES**

**1125 MAIN STREET**
**PAWTUCKET, RI 02860**
**Tel:(401) 725-4883**
**Fax: (401) 729-4894**
**www.microfibres.com**

# Fax

| | | | |
|---|---|---|---|
| **To:** | Jeff Laws | **From:** | Jim Fulks |
| **Fax:** | | **Pages:** | (including Coversheet) 02 |
| **Phone:** | | **Date:** | September 5, 2002 |
| **Re:** | Squires letter | **CC:** | |

☐ **Urgent** ☒ **For Review** ☐ **Please Comment** ☒ **Please Reply** ☐ **Please Recycle**

For your information.

Jim

☐ Confidential

br

F:\BARB\Forms\fax templates\Tech. Serv\Laws 08-21-02. Fax.doc

Squires legal file

MEMO

December 4, 2002

TO: Maureen Owen

COPY TO: Jim Fulks
Mary Ann Beirne
Jeff Laws
Squires File

FROM: Jim McCulloch

SUBJECT: Phone Conversation with Bill Squires on 12/3/02

On 12/3/02, Bill Squires, Sr., called to update me on the status of their negotiations with Shot International and on the commitments they made to Microfibres to pay down the outstanding receivable.

Following is a brief summary of our discussions:

#1. Shot International did not take out Squires outstanding commitments to their bank of approximately $1.2 million. Shot International did not make an investment in Squires Company. According to Bill, Shot did agree to finance any additional purchasing, development, or other expenses to market and sell Squires Saddlecloth and other branded products through Shot's distribution system; however, before any of this can happen, Squires must take out their bank loan, as the bank has frozen any sales or other activity of Squires.

#2. Bill mentioned that they have retained the services of an investment banking firm to help them negotiate a loan payment and release from their bank so that they can begin doing business again. The investment banking firm feels that the current outstanding loan of $1 million (it was $1.2 million, however the bank evidently collected $200,000 or so of receivables to reduce this balance) can be bought out for a price of $500,000; however, they indicated this buyout must take place prior to year-end. One of the incentives for the bank to take this reduced amount would be to keep it off their year-end balance sheets. Bill stated that Squires has approximately $500,000 of assets still left within Squires (approx. $250,000 inventory and $250,000 in receivables) which would be released by the bank upon payment of the $500,000, therefore he feels this would be a very good deal.

#3. Squires currently has no money to pay this $500,000 buyout to the bank, as the bank has come in and basically seized all their business as well as personal assets. Squires also does not have any money to pay off the outstanding receivable to

[redacted]

Microfibres of $300,000+ let alone the $150,000-$175,000 he committed in our prior meeting. Bill feels that if he can get the bank off his back, Squires has a valid business plan envisioning a relationship between Shot International to handle the garment manufacturing and distribution, Squires to handle some sales and product development, and Microfibres, Inc. to provide fabric manufacturing, transfer printing, and development.

#4. Bill Squires, Sr., requested that Microfibres provide the $500,000 of cash to pay off the bank and in return we would receive part ownership in Squires including any remaining hard assets, such as inventory, receivables, etc., as well as all intellectual property. Bill mentioned that in order for this to happen, it would need to be done in the next week or two, as it doesn't appear Squires will be around much longer than that.

I advised Bill that I was disappointed that Squires had not again lived up to their commitment to pay down the outstanding receivable. (Quite frankly, we didn't feel Shot would go for the deal he proposed us anyway.) It seems as if in effect Squires was out of business. I told Bill that the options we were looking at were how to best collect the $300,000+ owed Microfibres, and I wasn't all that enthusiastic about investing an additional $500,000 to throw, in effect, good money after bad.

I did tell Bill we would take a look at this and request that he put in writing a firm proposal to Microfibres which he agreed to do no later than Thursday or Friday of this week. I told Bill that we would need to speak to Shot International prior to making any decision and requested that he provide a name and phone number for contact which he agreed to do. Finally, I told Bill that I felt there was very little, if any, value left in the Squires Company other than the Saddlecloth brand. I mentioned to him that the intellectual property value of the fabric formation patents they own is questionable given Microfibres, Inc. prior art in this area; however, I did acknowledge there may be some value in some of the garment manufacturing patents they own. I told Bill that should we proceed forward, I was not interested in a part ownership of Squires, and that any cash infusion by Microfibres of $500,000 plus $300,000 open receivable would be for the entire company.

On receipt of Bill's proposal, I would like to discuss on Friday. Please advise available times.

JRM:ak

22

**James Fulks**

**To:** James Fulks
**Subject:** RE: Squires Hightech

10-15-01

I will need information from you to complete a draft agreement. Also, I have not heard back from Jim on the draft license agreement. Bill Spuires called me again today. Jim is on his way to Winston-Salem. Please talk with him and see if you can collect any comments he may have either on the license agreement or to help craft a sales agreement.

Jim

-----Original Message-----
**From:** James Fulks
**Sent:** Wednesday, October 10, 2001 1:34 PM
**To:** Maureen Owen
**Subject:** FW: Squires Hightech

Maureen,
Attached is a draft agreement from Squires. The agreement will need to be expanded to include various legal protections. However, if you could confirm the terms and conditions, products, territory etc. I could start on this. I don't understand the commission basis or the transition language. As you know, I sent him a marked up Glabman agreement which Bill has worked from.

Jim

-----Original Message-----
**From:** WJ Squires [SMTP:wjsquires@squireshightech.com]
**Sent:** Wednesday, October 10, 2001 12:39 PM
**To:** 'James Fulks'
**Subject:** Squires Hightech

Dear Jim:

Attached please find a draft of our sales agreement, as we discussed.

William J. Squires
President
Squires Hightech Corp.

<< File: Microfibres sales agreement.doc >>

**James Fulks** 10/10/01

**To:** Maureen Owen
**Subject:** FW: Squires Hightech

Maureen,
Attached is a draft agreement from Squires. The agreement will need to be expanded to include various legal protections. However, if you could confirm the terms and conditions, products, territory etc. I could start on this. I don't understand the commission basis or the transition language. As you know, I sent him a marked up Glabman agreement which Bill has worked from.

Jim

-----Original Message-----
**From:** WJ Squires [SMTP:wjsquires@squireshightech.com]
**Sent:** Wednesday, October 10, 2001 12:39 PM
**To:** 'James Fulks'
**Subject:** Squires Hightech

Dear Jim:

Attached please find a draft of our sales agreement, as we discussed.

William J. Squires
President
Squires Hightech Corp.

Microfibres sales agreement.do...

10/10/01

I also ~~left~~ received a voice mail from Maureen today + left her one about ~~atty~~ information required for a sales agreement.

JF.

# SALES REPRESENTATIVE AGREEMENT
Based on agreement from Microfibres, Inc.

This SALES REPRESENTATIVE AGREEMENT (the "Agreement") dated as of the ___day of ____, 200_ by and between MICROFIBRES, INC., a Rhode Island Corporation, having its principal place of business at One Moshassuck Street, Pawtucket, Rhode Island 02853 (the "Manufacturer"), and Squires Hightech Corp., having its principal place of business at 433 Meadow Street, Fairfield, Connecticut 06430 (the "Representative").

In consideration of the mutual promises of the parties hereto, and of other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the parties hereto hereby agree as follows:

1. Sales Representation

(a.) Exclusive Representation. Manufacturer hereby constitutes and appoints Representative its sole and exclusive agent to sell all its first quality fiber dyed, transfer printed and wet print finished flocked fabrics and transfer prints (hereinafter collectively defined as the "Products") manufactured and sold in the Territory as hereinafter defined, to manufacturers, jobbers, and wholesalers for manufacture of garments and accessories, i.e. backpacks, hats, gloves, fanny packs, within the Territory (it being agreed that Representative is to receive no commissions on such Products sold, except in Europe).

(i) Flocked greige goods and printing fabric sold in the Territory.
(ii) Fiber dyed goods
(iii) Products which are seconds or closeouts sold in the Territory.

All of the products above to be sold under the Squires Hightech name and its brands. Any exceptions are to be jointly agreed upon.

(b.) Territory. Territory is defined as being worldwide, including North, Central, and South America, Europe, Asia, Africa, and Australia. Manufacturer shall retain no other representative for distribution and sale of the products without the approval and agreement of both parties.

(i) Europe: The Representative will work on a marketing commission basis of 20%, paying Microfibres Europe 5% for handling charges

2. <u>Transition</u>

As Squires Hightech Corp. makes the transition of producing fabric from Spectro Coating to Microfibres, Inc., there are still approximately 60,000 yards of apparel, 25,000 yards of backpack, and 5,000 yards of solid color substrates that Squires is obligated to sell.

(115)

**James Fulks** 10-10-01

**To:** Robert Hess
**Subject:** RE: CINC and Microfibres patent license agreement (Squires Hightech Corporation)

I have forwarded the draft revisions to Jim McCulloch and Maureen Owen and I am waiting for their response. I reminded them today that this matter needs to be resolved.
Jim

Manhattan NY City

-----Original Message-----
**From:** Robert Hess [SMTP:rhess@cobrinandgittes.com]
**Sent:** Monday, October 08, 2001 5:41 PM
**To:** jfulks@microfibres.com
**Subject:** Fw: CINC and Microfibres patent license agreement (Squires Hightech Corporation)

James:

Please let me know the status of the review of the licensing agreement between CINC and Microfibres.

Please consider one further change to be made in paragraph #2 of the Agreeement (changes are in bold):

License to CINC **and to Squires Hightech Corporation**. Effective upon the Effective Date, Microfibres hereby grants to CINC and to Squires Hightech Corporation a non-exclusive royalty free license to use the Licensed Patents worldwide in the flocked fabric industry for the term of this Agreement. **Microfibres hereby agrees not to grant any further licenses that would allow others to use the Licensed Patents without written authorization from CINC or from Squires Hightech Corporation.**

An updated version B of the Agrement is attached that contains this revision.

Also, a proposed generic letter to be sent out by Microfibres after the Agreement is signed to about six companies that Squires Hightech Corporation is aware of is also attached.

Robert Hess
<< File: Patent-information-generic.doc >> << File: PRV_460037_1-revb.doc >>

**James Fulks** 10-10-01

**To:** Alice Kraseiko
**Subject:** FW: CINC and Microfibres patent license agreement (Squires Hightech Corporation)

Alice,

I forwarded a draft agreement to Jim and Maureen as well as to Bill Squires.
Squires has proposed the changes in bold print below. I do not see a problem with these. Is the agreement acceptable to Jim. Maureen approved the first draft and she will receive a copy of this e-mail. In addition Squires has proposed the attached letter to be sent out to possible infringers. I am reviewing this letter at this time.

Jim

-----Original Message-----
**From:** Robert Hess [SMTP:rhess@cobrinandgittes.com]
**Sent:** Monday, October 08, 2001 5:41 PM
**To:** jfulks@microfibres.com
**Subject:** Fw: CINC and Microfibres patent license agreement (Squires Hightech Corporation)

James:

Please let me know the status of the review of the licensing agreement between CINC and Microfibres.

Please consider one further change to be made in paragraph #2 of the Agreeement (changes are in bold):

License to CINC **and to Squires Hightech Corporation**. Effective upon the Effective Date, Microfibres hereby grants to CINC and to Squires Hightech Corporation a non-exclusive royalty free license to use the Licensed Patents worldwide in the flocked fabric industry for the term of this Agreement. **Microfibres hereby agrees not to grant any further licenses that would allow others to use the Licensed Patents without written authorization from CINC or from Squires Hightech Corporation**.

An updated version B of the Agrement is attached that contains this revision.

Also, a proposed generic letter to be sent out by Microfibres after the Agreement is signed to about six companies that Squires Hightech Corporation is aware of is also attached.

Robert Hess

Patent-information-generic.doc...

PRV_460037_1-revb.doc

Squires legal file

**James Fulks**

**From:** Maureen Owen
**Sent:** Thursday, June 05, 2003 9:38 AM
**To:** Jim McCulloch
**Cc:** Mary Ann Beirne; James Fulks
**Subject:** Squires

**Importance:** High

Jim,
enclosed is Bill Squires, Jr.'s plan for paying off debt to Microfibres and to the Camouflage licensors, Mossy Oaks and Realtree.
He has indicated that there will be no deal with Schott.
His plan is for all U.S. Saddlecloth sales to go through Micro, with royalties and commissions paid to Mossy Oaks, Realtree and Micro. The only way that the license companies will agree is if they get the majority of the money up front.
As there is less and less U.S. business (most is done in Asia), I am concerned that MOaks and RTree will get paid, but that there is little hope of significantly reducing Squires debt to us.
I promised that I would forward the proposal for your review at Bill's request.
I am still vague on the details and asked Bill to put it in writing. It has not become significantly more clear.
When asked what was in it for Microfibres Bill offered the following response (paraphrased).

1. Microfibres would have the opportunity to deplete existing inventories.
2. Microfibres could continue to do business domestically
3. Microfibres could collect royalties on fabric made in Asia
4. There would be a pipeline of cash to pay Squires debt.

I do not see how we could agree in any principal to this proposal without a detailed plan.
I still want to resolve the patent issues as I still feel our best hope is with Schott, although as time passes, this could also be lost.

I would like to schedule a meeting to discuss this and the patent issues.
regards

Maureen Owen
Director of Business Development,
Specialty Products
Microfibres, Inc.
401 725-4883 x6300
mowen@microfibres.com

-----Original Message-----
**From:** BILL SQUIRES [SMTP:wtsquires@optonline.net]
**Sent:** Thursday, June 05, 2003 12:11 PM
**To:** mowen@microfibres.com
**Subject:** proposal

Maureen,
As discussed, the license partnership would be a way to secure Microfibres interests while keeping us all in the game, so to speak.

The basic concept is as follows.

We identify Micro as the master licensee.

All royalty payments would go to Microfibres.

Microfibres would distribute the monies to a previously agreed format.

We would need to establish something that would satisfy both Realtree and Mossy, because with out their license we could not proceed.



[redacted]

Our current partner is a company called Clark Textiles. They currently do 30 to 50 million in sales, and sell many different branded manufactures.

He currently has both Realtree and Mossy Oak licensees.
also he is the largest supplier to Cabela's in camo and Columbia Sportswear in both camo and solids.

We briefly discussed the strategy that you and I discussed in reference to pricing the products effectively to get to the distribution.We will discuss this further.He is open to this.

His production is primarily in Asia, however he is not at all against sourcing from the States.

He would not be interested in converting camo in the States, and we would license one other converter as mentioned, Jest Textiles.They currently have both licensees as well.

Initially the majority of the royalties would go to the camo folks with a portion going to Microfibres.
Solid colors, however would generate a larger percentage going to Microfibres.

If successful, debt is paid and the opportunity to get into more markets is enhanced.

Obviously this a conceptual overview and has to be fine tuned.

Basically, if you don't make it we license it. The stretch Saddle Cloth, which is currently made in Taiwan would be an example of this. I will forward a sample today for yours and Jim's review.

I will call to see if you have any questions, or you can reach me on my cell.

Bill

# SQUIRES HIGHTECH CORP.

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Maureen Owen | FROM: Bill Squires |
| COMPANY: Microfibres | DATE: 9/6/02 |
| FAX NUMBER: 1-401-722-8520 | TOTAL NO. OF PAGES INCLUDING COVER: 13 |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
| RE: | YOUR REFERENCE NUMBER: |

☐ URGENT ☐ FOR REVIEW ☐ PLEASE COMMENT ☐ PLEASE REPLY ☐ PLEASE RECYCLE

Notes/Comments:

9/11/02
CC: 9RM
M A BEIRNE
J LAWS
J FULKS

433 MEADOW STREET
FAIRFIELD, CT 06477
PHONE: 203-579-5166
FAX: 203-579-8821

[redacted]

09/06/02 FRI 15:28 [TX/RX NO 9177]

SQUIRES HIGHTECH CORP.

TO: Maureen Owen

Enclosed please find our 2001 year end figures. We have not had an audited report made yet due to lack of cash. I had forgotten that. Also enclosed is our six month statement to June 30, 2002.

Thanks for all your help in this matter.

We are having our lawyer draw up a letter securing Microfibres second position behind Webster Bank.

We plan on being closer next week to getting our investor agreement finalized.

Regards:

Bill

W.J. Squires

433 MEADOW STREET •• FAIRFIELD, CT 06430 •• PHONE 203 579-5166 •• FAX 203 579-8821

09/06/02 FRI 15:28 [TX/RX NO 9177]

SQUIRES HIGHTECH
INCOME STATEMENT
Period: 01/01/02 to 06/30/02

| | | Current-period Amount | Ratio | | Year-to-date Amount | Ratio |
|---|---|---|---|---|---|---|
| ALES: | | | | | | |
| addle-Cloth Apparel Sales | $ | 377,921.91 | 23.74 | $ | 377,921.91 | 23.74 |
| /C StormSeal Sales | | 15,910.20 | 1.00 | | 15,910.20 | 1.00 |
| addle-Lite Cloth Camo | | 72,342.25 | 4.54 | | 72,342.25 | 4.54 |
| addle-Cloth Extra Sales | | 117,710.00 | 7.39 | | 117,710.00 | 7.39 |
| ingle-Sided Fleece-13oz | | 56,516.25 | 3.55 | | 56,516.25 | 3.55 |
| ouble-Sided Fleece-16oz | | 274,881.80 | 17.27 | | 274,881.80 | 17.27 |
| oretex Micro Fleece-12oz | | 31,763.25 | 2.00 | | 31,763.25 | 2.00 |
| 'leece Sales | | 3,587.00 | .23 | | 3,587.00 | .23 |
| ingle-Sided Fleece w/ Film | | 6,659.10 | .42 | | 6,659.10 | .42 |
| rop in Liner | | 1,787.50 | .11 | | 1,787.50 | .11 |
| /C Apparel Solid Color Sales | | 23,005.25 | 1.44 | | 23,005.25 | 1.44 |
| /C Solid w/StormSeal | | 164.25 | .01 | | 164.25 | .01 |
| addle-Lite Cloth Solid Color | | (355.04) | .02- | | (355.04) | .02- |
| /C Backpack Sales | | 42,763.86 | 2.69 | | 42,763.86 | 2.69 |
| /C MicroFibre Backpack | | 482,232.95 | 30.29 | | 482,232.95 | 30.29 |
| /C Backpack Solid Color Sales | | 5,916.55 | .37 | | 5,916.55 | .37 |
| olorfusion Sales | | 50,378.75 | 3.16 | | 50,378.75 | 3.16 |
| iberglass Sales | | 11,799.06 | .74 | | 11,799.06 | .74 |
| creen Surcharge Income | | 3,725.00 | .23 | | 3,725.00 | .23 |
| nergy Surcharge Income | | 15,022.95 | .94 | | 15,022.95 | .94 |
| unting Cap Sales | | 1,899.95 | .12 | | 1,899.95 | .12 |
| port Cap Sales | | 80.00 | .01 | | 80.00 | .01 |
| ther Income | | (3,605.65) | .23- | | (3,605.65) | .23- |
| TOTAL SALES | $ | 1,592,107.14 | 100.00 | $ | 1,592,107.14 | 100.00 |
| OST OF SALES: | | | | | | |
| /C Apparel Material Purchase | $ | 364,383.14 | 22.89 | $ | 364,383.14 | 22.89 |
| ingle-Sided Fleece Purchases | | 21,622.34 | 1.36 | | 21,622.34 | 1.36 |
| ouble-Sided Fleece Purchases | | 100,338.92 | 6.30 | | 100,338.92 | 6.30 |
| rown Liner Material Purchases | | 11,030.64 | .69 | | 11,030.64 | .69 |
| /C Solid Material Purchase | | 9,026.20 | .57 | | 9,026.20 | .57 |
| /C Backpack Material Purchase | | 32,751.58 | 2.06 | | 32,751.58 | 2.06 |
| artford Fib Backpack Mat Purc | | 408,638.78 | 25.67 | | 408,638.78 | 25.67 |
| /C Backpack Solid Material | | 1,003.00 | .06 | | 1,003.00 | .06 |
| iberglass Purchases | | 10,701.04 | .67 | | 10,701.04 | .67 |
| arp Knit Solid Color Purchase | | 10,081.11 | .63 | | 10,081.11 | .63 |
| olyester Knit Material | | 33,952.48 | 2.13 | | 33,952.48 | 2.13 |
| unting Cap Purchases | | 25,428.06 | 1.60 | | 25,428.06 | 1.60 |
| port Cap Purchases | | 5,947.90 | .37 | | 5,947.90 | .37 |
| ang Tags | | 2,438.47 | .15 | | 2,438.47 | .15 |
| /C Apparel Printing | | 12,510.19 | .79 | | 12,510.19 | .79 |
| leece Printing | | 10,184.00 | .64 | | 10,184.00 | .64 |
| leece Brushing | | 17,193.80 | 1.08 | | 17,193.80 | 1.08 |
| olynylux Printing | | 12,310.50 | .77 | | 12,310.50 | .77 |
| ylon Paper | | 42,597.00 | 2.68 | | 42,597.00 | 2.68 |
| ater Repelling - Saddle-Cloth | | 20,623.67 | 1.30 | | 20,623.67 | 1.30 |
| ilm Laminate - Saddle-Cloth | | 6,439.22 | .40 | | 6,439.22 | .40 |

SQUIRES HIGHTECH
INCOME STATEMENT
Period: 01/01/02 to 06/30/02

| | Current-period Amount | Current-period Ratio | Year-to-date Amount | Year-to-date Ratio |
|---|---|---|---|---|
| OST OF SALES (CONT) : | | | | |
| reight & Delivery - S/C Sales | 17,507.35 | 1.10 | 17,507.35 | 1.10 |
| rethane Coating | 36,416.53 | 2.29 | 36,416.53 | 2.29 |
| ilm Laminate- Fleece | 8,653.95 | .54 | 8,653.95 | .54 |
| ELLUX CHAR LAMINATE | 7,452.00 | .47 | 7,452.00 | .47 |
| reight on S/C Purchases | 46,552.42 | 2.92 | 46,552.42 | 2.92 |
| torage & Handling Charges | 14,564.09 | .91 | 14,564.09 | .91 |
| oyalty Expense - Saddle-Cloth | 150,416.21 | 9.45 | 150,416.21 | 9.45 |
| urchases of Fabric Materials | (198,815.36) | 12.49- | (198,815.36) | 12.49- |
| TOTAL COST OF SALES | $ 1,241,949.23 | 78.01 | $ 1,241,949.23 | 78.01 |
| GROSS PROFIT | $ 350,157.91 | 21.99 | $ 350,157.91 | 21.99 |
| ELLING EXPENSES | | | | |
| esearch and Development | $ 2,429.26 | .15 | $ 2,429.26 | .15 |
| ample Garments | 2,059.24 | .13 | 2,059.24 | .13 |
| dvertising | 46,562.97 | 2.92 | 46,562.97 | 2.92 |
| ublic Relations | 17,347.91 | 1.09 | 17,347.91 | 1.09 |
| eb Site Costs & Maint | 479.65 | .03 | 479.65 | .03 |
| arketing Services Expense | 10,013.89 | .63 | 10,013.89 | .63 |
| rade Shows | 13,566.84 | .85 | 13,566.84 | .85 |
| ravel Expense | 31,296.34 | 1.97 | 31,296.34 | 1.97 |
| reight on Samples | 11,863.73 | .75 | 11,863.73 | .75 |
| TOTAL SELLING EXPENSES | $ 135,619.83 | 8.52 | $ 135,619.83 | 8.52 |

SQUIRES HIGHTECH
INCOME STATEMENT
Period: 01/01/02 to 06/30/02

| | Current-period Amount | Ratio | Year-to-date Amount | Ratio |
|---|---|---|---|---|
| ENERAL & ADMINISTRATIVE: | | | | |
| fficer's Salaries | $ 100,283.52 | 6.30 | $ 100,283.52 | 6.30 |
| alaries and Wages | 111,169.73 | 6.98 | 111,169.73 | 6.98 |
| etirement Plan Costs | 1,100.00 | .07 | 1,100.00 | .07 |
| uto Expense | 24,518.44 | 1.54 | 24,518.44 | 1.54 |
| ank Service Charges | 8,242.19 | .52 | 8,242.19 | .52 |
| omputer System | 530.00 | .03 | 530.00 | .03 |
| ues and Subscriptions | 6,951.52 | .44 | 6,951.52 | .44 |
| tilities | 2,506.31 | .16 | 2,506.31 | .16 |
| nsurance - Employee group | 21,690.53 | 1.36 | 21,690.53 | 1.36 |
| nsurance - General | 16,647.57 | 1.05 | 16,647.57 | 1.05 |
| nsurance - Officers' Life | 1,262.94 | .08 | 1,262.94 | .08 |
| ccounting Expense | 34,825.00 | 2.19 | 34,825.00 | 2.19 |
| egal Expense - Patent | 3,026.91 | .19 | 3,026.91 | .19 |
| ffice Expense | 6,800.72 | .43 | 6,800.72 | .43 |
| utside Services | 25,136.95 | 1.58 | 25,136.95 | 1.58 |
| ostage Expense | 149.91 | .01 | 149.91 | .01 |
| ent Expense | 24,000.00 | 1.51 | 24,000.00 | 1.51 |
| axes - Real Estate | 123.30 | .01 | 123.30 | .01 |
| axes - Payroll | 26,023.03 | 1.63 | 26,023.03 | 1.63 |
| elephone | 14,059.66 | .88 | 14,059.66 | .88 |
| eals & Entertainment | 1,300.00 | .08 | 1,300.00 | .08 |
| TOTAL GENERAL & ADMINIS. | $ 430,348.23 | 27.03 | $ 430,348.23 | 27.03 |
| NET OPERATING INCOME(LOSS) | $ (215,810.15) | 13.56- | $ (215,810.15) | 13.56- |
| ON OPERATING INCOME(LOSS): | | | | |
| nterest Expense - LOC | $ 41,658.71 | 2.62 | $ 41,658.71 | 2.62 |
| nterest Expense - Other | 23,499.67 | 1.48 | 23,499.67 | 1.48 |
| ost of LOC Audits | 7,118.65 | .45 | 7,118.65 | .45 |
| egal Expense - Other | 60,234.52 | 3.78 | 60,234.52 | 3.78 |
| efective Fabric Write Off | 318,239.22 | 19.99 | 318,239.22 | 19.99 |
| TOTAL NON OPERATING INC/LOSS | $ (450,750.77) | 28.31- | $ (450,750.77) | 28.31- |
| NET INCOME (LOSS) BEFORE TAX | $ (666,560.92) | 41.87- | $ (666,560.92) | 41.87- |
| J Corporate Tax | $ 240.00 | .02 | $ 240.00 | .02 |
| I Corporate Tax | 250.00 | .02 | 250.00 | .02 |
| axes - Federal Corporate | 243.00 | .02 | 243.00 | .02 |
| NET INCOME (LOSS) | $ (667,293.92) | 41.91- | $ (667,293.92) | 41.91- |

-- End of report --

09/06/02 FRI 15:28 [TX/RX NO 9177]

SQUIRES HIGHTECH
BALANCE SHEET
As of 06/30/02

ASSETS
-----

| | | | |
|---|---|---|---|
| CURRENT ASSETS: | | | |
| ccounts Receivable | $ 587,265.47 | | |
| ax Refund Receivable | 112,699.00 | | |
| llowance for Bad Debts | 86,682.11 | | |
| aper Inventory-Raw Material | 244,216.47 | | |
| leece Inventory-Raw Material | 125,910.28 | | |
| 'C Inventory-Raw Material | 139,275.90 | | |
| 'C FG Inventory PURE 214 | 36,312.44 | | |
| 'C FG Inventory HT 214 | 192,104.56 | | |
| 'C FG Inventory HT-F 214 | 41,794.33 | | |
| 'C Lite Camo FG Inv HT | 20,726.41 | | |
| )13 Fleece | 35,274.01 | | |
| )16 Fleece | 22,633.20 | | |
| arp Knits | 40,960.00 | | |
| oretex Micro Fleece | 61.23 | | |
| ackpack FG Inv HT 213 | 47,839.87 | | |
| ackpack FG Inv Urethane 213 | 65,547.93 | | |
| 'C Solid Color Inv HT | 77,666.92 | | |
| 'C Solid Color Inv HT-F | 277.29 | | |
| 'C Lite Solids FG Inv HT | 13,436.92 | | |
| ackpack Solid Color Pure | 3,032.64 | | |
| ackpack Solid Color HT | 8,831.90 | | |
| ackpack Solid Color Urethane | 44,406.54 | | |
| unting Caps | 212,640.40 | | |
| port Caps | 6,953.46 | | |
| | --------------- | | |
| TOTAL CURRENT ASSETS | | $ 2,166,549.28 | |
| PROPERTY AND EQUIPMENT: | | | |
| losing Costs For LOC | $ 83,263.16 | | |
| ccum Amort Closing Costs | (45,248.65) | | |
| urniture and Fixtures | 31,530.45 | | |
| 'D - Furniture and Fixtures | (24,365.39) | | |
| creens, Equipment | 148,981.33 | | |
| 'D - Screens, Equipment | (45,544.79) | | |
| omputers | 72,760.87 | | |
| 'D - Computers | (51,586.12) | | |
| atent Cost | 109,144.67 | | |
| 'D - Patent Costs | (17,890.00) | | |
| | --------------- | | |
| TOTAL PROPERTY AND EQUIP. | | $ 261,045.53 | |
| OTHER ASSETS: | | | |
| ign Man Investment | $ 117,766.67 | | |
| | --------------- | | |
| TOTAL OTHER ASSETS | | $ 117,766.67 | |
| | | --------------- | |
| TOTAL ASSETS | | | $ 2,545,361.48 |
| | | | =============== |

09/06/02 FRI 15:28 [TX/RX NO 9177]

SQUIRES HIGHTECH
BALANCE SHEET
As of 06/30/02

IABILITIES AND EQUITY

JRRENT LIABILITIES:

| | | |
|---|---|---|
| :counts Payable | $ 1,231,266.19 | |
| otes Payable - Short Term | 1,384,258.71 | |
| nterest Payable -LOC | 8,153.35 | |
| ayroll Taxes Payable | 6,580.34 | |
| TOTAL CURRENT LIABILITIES | | $ 2,630,258.59 |

ON-CURRENT LIABILITIES:

| | | |
|---|---|---|
| otes Payable | $ 598,003.28 | |
| TOTAL NON-CURRENT LIABILS | | $ 598,003.28 |

QUITY:

| | | | |
|---|---|---|---|
| ommon Stock | $ 200.00 | | |
| etained Earnings | (15,806.47) | | |
| ET INCOME (LOSS) | (667,293.92) | | |
| TOTAL EQUITY | | $ (682,900.39) | |
| TOTAL LIABILS. AND EQUITY | | | $ 2,545,361.48 |

-- End of report --

SQUIRES HIGHTECH
INCOME STATEMENT
Period: 12/01/01 to 12/31/01

| | | Current-period Amount | Ratio | | Year-to-date Amount | Ratio |
|---|---|---|---|---|---|---|
| ALES: | | | | | | |
| addle-Cloth Apparel Sales | $ | 65,507.74 | 22.33 | $ | 437,631.15 | 9.69 |
| /C StormSeal Sales | | 10,265.05 | 3.50 | | 8,177.23 | .18 |
| addle-Lite Cloth Camo | | .00 | .00 | | 214,002.05 | 4.74 |
| addle-Cloth Extra Sales | | 7,655.85 | 2.61 | | 1,035,805.36 | 22.93 |
| ingle-Sided Fleece-13oz | | (1,386.00) | .47- | | 207,330.73 | 4.59 |
| ouble-Sided Fleece-16oz | | 93,316.59 | 31.81 | | 740,769.13 | 16.40 |
| oretex Micro Fleece-12oz | | 23,179.05 | 7.90 | | 184,551.75 | 4.09 |
| leece Sales | | .00 | .00 | | 16,980.15 | .38 |
| leece w/StormSeal | | .00 | .00 | | 1,867.40 | .04 |
| ingle-Sided Fleece w/ Film | | .00 | .00 | | 41,178.35 | .91 |
| top in Liner | | .00 | .00 | | 3,851.00 | .09 |
| olyNyLux Sales | | .00 | .00 | | 119,490.00 | 2.65 |
| 'C Apparel Solid Color Sales | | 3,049.50 | 1.04 | | 251,451.85 | 5.57 |
| 'C Solid w/StormSeal | | 2,671.80 | .91 | | 53,479.80 | 1.18 |
| addle-Lite Cloth Solid Color | | .00 | .00 | | (1,588.14) | .04- |
| addle-Lite Cloth Solid w/Film | | .00 | .00 | | 32,696.40 | .72 |
| 'C Backpack Sales | | 13,889.65 | 4.73 | | 285,387.87 | 6.32 |
| 'C MicroFibre Backpack | | 53,297.89 | 18.17 | | 525,111.36 | 11.62 |
| 'C Backpack Solid Color Sales | | 2,550.00 | .87 | | 10,586.33 | .23 |
| utting Fees | | 25.00 | .01 | | 803.05 | .02 |
| arp Knit Sales | | 4,154.43 | 1.42 | | 244,477.77 | 5.41 |
| iberglass Sales | | 3,259.62 | 1.11 | | 8,606.73 | .19 |
| ommission Income | | .00 | .00 | | 1,196.00 | .03 |
| creen Surcharge Income | | 2,000.00 | .68 | | 16,150.00 | .36 |
| nergy Surcharge Income | | 9,960.88 | 3.40 | | 78,137.14 | 1.73 |
| 'C Sales Return & Allowances | | .00 | .00 | | 811.46 | .02 |
| TOTAL SALES | $ | 293,397.05 | 100.00 | $ | 4,517,359.00 | 100.00 |
| OST OF SALES: | | | | | | |
| 'C Apparel Material Purchase | $ | 251,303.34 | 85.65 | $ | 1,024,263.40 | 22.67 |
| leece Material Purchase | | .00 | .00 | | 40,430.05 | .89 |
| oretex Micro Material Purchas | | .00 | .00 | | 85,781.19 | 1.90 |
| ingle-Sided Fleece Purchases | | 18,849.37 | 6.42 | | 64,629.94 | 1.43 |
| ouble-Sided Fleece Purchases | | 50,940.31 | 17.36 | | 142,594.59 | 3.16 |
| ollux Material Purchase | | .00 | .00 | | 30,610.54 | .68 |
| C Solid Material Purchase | | .00 | .00 | | 17,970.83 | .40 |
| C Backpack Material Purchase | | 79,220.39 | 27.00 | | 79,220.39 | 1.75 |
| ARTFORD FIB BACKPACK MAT PURC | | 14,613.53 | 4.98 | | 588,827.84 | 13.03 |
| 'C Backpack Solid Material | | .00 | .00 | | 21,666.50 | .48 |
| iberglass Purchases | | .00 | .00 | | 4,046.11 | .09 |
| OLY/COTTON KNIT MATERIAL | | .00 | .00 | | 18,423.98 | .41 |
| OLYESTER KNIT MATERIAL | | .00 | .00 | | 98,240.16 | 2.17 |
| ang Tags | | 13,393.21 | 4.56 | | 58,434.60 | 1.29 |
| abels Saddle-Cloth | | .00 | .00 | | 8,340.97 | .18 |
| 'C Apparel Printing | | 4,200.90 | 1.43 | | 49,761.85 | 1.10 |
| leece Printing | | 8,848.73 | 3.02 | | 48,806.20 | 1.08 |
| leece Brushing | | 5,643.73 | 1.92 | | 69,208.81 | 1.53 |
| 'C Backpack Printing | | .00 | .00 | | 7,200.85 | .16 |
| olynylux Printing | | .00 | .00 | | 9,728.21 | .22 |
| ylon Paper | | 23,903.37 | 8.15 | | 132,708.70 | 2.94 |
| olyester Paper | | 7,916.08 | 2.70 | | 112,696.09 | 2.49 |
| ater Repelling - Saddle-Cloth | | 368.77 | .12 | | 51,739.23 | 1.15 |
| ilm Laminate - Saddle-Cloth | | 157.59 | .05 | | 28,069.41 | .62 |

SQUIRES HIGHTECH
INCOME STATEMENT
Period: 12/01/01 to 12/31/01

| | Current-period Amount | Ratio | Year-to-date Amount | Ratio |
|---|---|---|---|---|
| )ST OF SALES (CONT) : | | | | |
| :reight & Delivery - S/C Sales | 552.49 | .19 | 7,093.74 | .16 |
| :ethane Coating | 5,923.14 | 2.02 | 49,169.41 | 1.09 |
| ilm Laminate- Fleece | .00 | .00 | 4,767.74 | .11 |
| leece Brushing | .00 | .00 | 1,897.92 | .04 |
| :LLUX CHAR LAMINATE | .00 | .00 | 41,327.92 | .91 |
| :eight on S/C Purchases | 664.28 | .23 | 66,186.43 | 1.47 |
| :orage & Handling Charges | 1,291.51 | .44 | 56,135.72 | 1.24 |
| )yalty Expense - Saddle-Cloth | (37,051.77) | 12.63- | 306,228.32 | 6.78 |
| ırchase Discounts - S/C | 599.28 | .20 | .00 | .00 |
| ırchases of Fabric Materials | 126,162.88 | 43.00 | 126,162.88 | 2.79 |
| TOTAL COST OF SALES | $ 577,501.13 | 196.83 | $ 3,452,370.92 | 76.42 |
| GROSS PROFIT | $ (284,104.08) | 96.83- | $ 1,064,988.08 | 23.58 |
| :LLING EXPENSES | | | | |
| :search and Development | $ .00 | .00 | $ 6,325.52 | .14 |
| ımple Garments | 8.45 | .00 | 2,615.49 | .06 |
| )mmissions | .00 | .00 | 9,218.19 | .20 |
| lvertising | 74,724.90 | 25.47 | 147,108.56 | 3.26 |
| ıblic Relations | 9,780.30 | 3.33 | 53,411.94 | 1.18 |
| :B SITE COSTS & MAINT | .00 | .00 | 1,625.06 | .04 |
| ıRKETING SERVICES EXPENSE | 6,134.45 | 2.09 | 54,554.31 | 1.21 |
| ıot Show | .00 | .00 | 2,075.00 | .05 |
| :ade Shows | 3,683.50 | 1.26 | 19,924.34 | .44 |
| :ochures & Catalogues | .00 | .00 | 1,517.92 | .03 |
| ·avel Expense | 5,753.59 | 1.96 | 59,424.86 | 1.32 |
| ·eight on Samples | 2,002.68 | .68 | 30,424.84 | .67 |
| TOTAL SELLING EXPENSES | $ 102,087.87 | 34.80 | $ 388,226.03 | 8.59 |

SQUIRES HIGHTECH
INCOME STATEMENT
Period: 12/01/01 to 12/31/01

| | | Current-period Amount | Ratio | | Year-to-date Amount | Ratio |
|---|---|---|---|---|---|---|
| :NERAL & ADMINISTRATIVE: | | | | | | |
| :ficer's Salaries | $ | 14,581.16 | 4.97 | $ | 127,176.53 | 2.82 |
| ılaries and Wages | | 21,718.15 | 7.40 | | 251,439.04 | 5.57 |
| ıto Expense | | 1,791.07 | .61 | | 31,955.93 | .71 |
| ınk Service Charges | | 1,151.38 | .39 | | 8,289.55 | .18 |
| ›mputer System | | .00 | .00 | | 4,298.41 | .10 |
| :LEPHONE HARDWARE | | .00 | .00 | | 27.19 | .00 |
| ıes and Subscriptions | | 294.00 | .10 | | 1,312.53 | .03 |
| :ilities | | 785.11 | .27 | | 9,041.13 | .20 |
| ısurance - Employee group | | 4,535.11 | 1.55 | | 48,784.09 | 1.08 |
| ısurance - General | | 7,228.39 | 2.46 | | 30,900.19 | .68 |
| ısurance - Officers' Life | | 172.41 | .06 | | 172.41 | .00 |
| ıterest Expense - LOC | | 11,883.84 | 4.05 | | 121,968.38 | 2.70 |
| ıterest Expense - Other | | 14,986.94 | 5.11 | | 18,847.45 | .42 |
| ›st of LOC Audits | | .00 | .00 | | 33,073.54 | .73 |
| :counting Expense | | 1,592.50 | .54 | | 34,513.12 | .76 |
| :gal Expense - Patent | | 10,594.75 | 3.61 | | 18,527.74 | .41 |
| gal Expense - Other | | 91,901.47 | 31.32 | | 148,017.29 | 3.28 |
| .sc. Expense | | .00 | .00 | | 126.63 | .00 |
| fice Expense | | .00 | .00 | | 17,768.63 | .39 |
| .tside Services | | (2,092.81) | .71- | | 24,872.80 | .55 |
| ›stage Expense | | .00 | .00 | | 2,471.90 | .05 |
| nt Expense | | 3,000.00 | 1.02 | | 36,000.00 | .80 |
| pairs and Maintenance | | .00 | .00 | | 4,720.92 | .10 |
| xes - Real Estate | | .00 | .00 | | 2,197.86 | .05 |
| xes - Payroll | | 2,754.97 | .94 | | 25,981.01 | .58 |
| xes - Other | | .00 | .00 | | 33,863.02 | .75 |
| lephone | | 4,042.90 | 1.38 | | 38,088.15 | .84 |
| als & Entertainment | | 159.40 | .05 | | 4,184.74 | .09 |
| TOTAL GENERAL & ADMINIS. | $ | 191,080.74 | 65.13 | $ | 1,078,620.18 | 23.88 |
| NET OPERATING INCOME(LOSS) | $ | (577,272.69) | 196.75- | $ | (401,858.13) | 8.90- |
| HER (INCOME) AND EXPENSES: | | | | | | |
| TOTAL OTHER (INCOME) AND EXP | $ | .00 | .00 | $ | .00 | .00 |
| NET INCOME (LOSS) BEFORE TAX | $ | (577,272.69) | 196.75- | $ | (401,858.13) | 8.90- |
| NET INCOME (LOSS) | $ | (577,272.69) | 196.75- | $ | (401,858.13) | 8.90- |

-- End of report --

09/06/02 FRI 15:28 [TX/RX NO 9177]

SQUIRES HIGHTECH
BALANCE SHEET
As of 12/31/01

SSETS
-----

| | | | |
|---|---|---|---|
| JRRENT ASSETS: | | | |
| isbursement Acct-Webster | $ 7,276.07 | | |
| learing Account-Webster | 29,916.95 | | |
| avings Account-Galaxy | 6,825.65 | | |
| ccounts Receivable | 1,116,453.45 | | |
| aper Inventory-Raw Material | 263,040.82 | | |
| leece Inventory-Raw Material | 138,230.68 | | |
| 'C Inventory-Raw Material | 93,625.03 | | |
| 'C FG Inventory PURE 214 | 21,372.56 | | |
| 'C FG Inventory HT 214 | 223,088.39 | | |
| 'C FG Inventory HT-F 214 | 38,708.52 | | |
| 'C Lite Camo FG Inv HT | 21,396.40 | | |
| )13 Fleece | 37,412.56 | | |
| )16 Fleece | 27,643.84 | | |
| arp Knits | 16,172.70 | | |
| oretex Micro Fleece | 12,553.30 | | |
| ackpack FG Inv HT 213 | 28,703.05 | | |
| ackpack FG Inv Urethane 213 | 48,068.87 | | |
| 'C Solid Color Inv HT | 94,864.61 | | |
| 'C Lite Solids FG Inv HT | 13,436.92 | | |
| ackpack Solid Color Urethane | 43,413.00 | | |
| | --------------- | | |
| TOTAL CURRENT ASSETS | | $ 2,282,203.37 | |
| ROPERTY AND EQUIPMENT: | | | |
| LOSING COSTS FOR LOC | $ 83,263.16 | | |
| CCUM AMORT CLOSING COSTS | (45,248.65) | | |
| urniture and Fixtures | 31,530.45 | | |
| 'D - Furniture and Fixtures | (24,365.39) | | |
| creens, Equipment | 120,377.48 | | |
| 'D - Screens, Equipment | (45,544.79) | | |
| omputers | 72,760.87 | | |
| 'D - Computers | (51,586.12) | | |
| atent Cost | 109,144.67 | | |
| 'D - Patent Costs | (17,890.00) | | |
| | --------------- | | |
| TOTAL PROPERTY AND EQUIP. | | $ 232,441.68 | |
| THER ASSETS: | | | |
| SIGN MAN INVESTMENT | $ 11,900.00 | | |
| | --------------- | | |
| TOTAL OTHER ASSETS | | $ 11,900.00 | |
| | | --------------- | |
| TOTAL ASSETS | | | $ 2,526,545.05 |
| | | | =============== |

SQUIRES HIGHTECH
BALANCE SHEET
As of 12/31/01

IABILITIES AND EQUITY
---------------------

JRRENT LIABILITIES:

| | | |
|---|---|---|
| :counts Payable | $ 661,896.60 | |
| otes Payable - Short Term | 1,514,892.23 | |
| | --------------- | |
| TOTAL CURRENT LIABILITIES | | $ 2,176,788.83 |

ON-CURRENT LIABILITIES:

| | | |
|---|---|---|
| otes Payable | $ 478,061.69 | |
| | --------------- | |
| TOTAL NON-CURRENT LIABILS | | $ 478,061.69 |

QUITY:

| | | | |
|---|---|---|---|
| ommon Stock | $ 200.00 | | |
| :tained Earnings | 273,352.66 | | |
| :T INCOME (LOSS) | (401,858.13) | | |
| | --------------- | | |
| TOTAL EQUITY | | $ (128,305.47) | |
| | | --------------- | |
| TOTAL LIABILS. AND EQUITY | | | $ 2,526,545.05 |
| | | | --------------- |

-- End of report --

# SQUIRES HIGHTECH CORP.

RECEIVED
SEP 04 2002
BY:

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Mr Jim Fulks | FROM: Billy |
| COMPANY: Microfibers | DATE: |
| FAX NUMBER: 1-401-722-8520. | TOTAL NO. OF PAGES INCLUDING COVER: 2 |
| PHONE NUMBER: 401-725-4330 - CC. Maureen Owen | SENDER'S REFERENCE NUMBER: |
| RE: Company information | YOUR REFERENCE NUMBER: |

☐ URGENT ☒ FOR REVIEW ☐ PLEASE COMMENT ☐ PLEASE REPLY ☐ PLEASE RECYCLE

Notes/Comments:

Mr Fulks

As discussed please find information in the form of their letter-head with all the particulars

Regards

WTS

433 MEADOW STREET
FAIRFIELD, CT 06477
PHONE: 203-579-5166
FAX: 203-579-8821

[redacted]

09/03/02 TUE 18:02 [TX/RX NO 9049]

**Schott International, Inc.**
Worldwide Leaders in Greige & Converted Fabrics
P.O. Box 7152 • Akron, Ohio 44306
Phone: (330) 773-7851 • (800) 321-2178 • Fax: (330) 773-7856 • www.schottint.com

August 29, 2002

Mr. Bill Squires, Sr.
SQUIRES HIGHTECH CORP.
433 Meadow St.
Fairfield, CT 06430

Dear Bill:

To confirm our conversation concerning letter of intent, please accept this letter as one for you and whomever it may concern.

I know there are a few other areas I might have overlooked but I think we are in general agreement on how we hope things will take place. Let me know if you need any other information. Look forward to hearing from you soon.

Yours very truly,

SCHOTT INTERNATIONAL, INC.

Dick

Dick Cruickshank,
Vice President – Sales

RZC:aj

"Our Customers and Our People are the Fabric of Our Success."

**James Fulks**

| | |
|---|---|
| **From:** | WJ Squires [wjsquires@squireshightech.com] |
| **Sent:** | Thursday, November 01, 2001 2:46 PM |
| **To:** | 'James Fulks' |
| **Subject:** | RE: License Agreement |

Jim,

I understand that we need to move on this project methodically, however, due to the fact that buying decisions are in process now, the timing of this letter is critical. I think it is safe to say that the contract will be signed shortly. Therefore, for maximum effectiveness, it would be timely to draft the letter simultaneously to achieve our intended results. The "best" time would be by the close of business Friday.

Best Regards,
William J. Squires
Squires Hightech Corp.

-----Original Message-----
From: James Fulks [SMTP:jfulks@microfibres.com]
Sent: Thursday, November 01, 2001 12:01 PM
To: 'wjsquires@squireshightech.com'
Subject: RE: License Agreement

Bill,
As I mentioned to you earlier, we must have an agreement prior to any letters being mailed. I have just received the changes your attorney has requested and I will get to them today if my attorney is available and then forward you a final copy to be signed.

Jim

> -----Original Message-----
> From:WJ Squires [SMTP:wjsquires@squireshightech.com]
> Sent: Thursday, November 01, 2001 11:46 AM
> To: 'James Fulks'
> Subject: License Agreement
>
> Dear Jim,
>
> Thank you for the "license agreement." We have sent it on to our lawyer,
> who will review the agreement immediately and send it back to us for
> signing and/or corrections.
>
> We still anxiously await the letter that is to be sent to the trade
today.
>
> Best Regards,
> William J. Squires
> Squires Hightech Corp.
>



[redacted]

**James Fulks**

| | |
|---|---|
| **From:** | WJ Squires [wjsquires@squireshightech.com] |
| **Sent:** | Friday, September 28, 2001 11:27 AM |
| **To:** | 'mowen@microfibres.com'; 'jfulks@microfibres.com' |
| **Subject:** | FW: Saddle-Cloth Loden Green, Loden Green Heather, & Camouflage |

-----Original Message-----
From: WJ Squires [SMTP:wjsquires@squireshightech.com]
Sent: Friday, September 28, 2001 10:13 AM
To: 'francois.guion@decathlon.fr'
Cc: 'William T. Squires'
Subject: Saddle-Cloth Loden Green, Loden Green Heather, & Camouflage

Dear Francois:

It is vitally important to us to have loden green Saddle-Cloth(r) fabric in Decathlon's garments in order to promote the performance aspects of Saddle-Cloth into the European hunting business. If we can do this in conjunction with camouflage Saddle-Cloth, it makes the entire package more potent in regards to the marketing/advertising/promotion point of view.

As you probably know, Squires Hightech Corp. and Microfibres, Inc. have at least six or seven international patents in reference to the flocked fabrics. Squires Hightech Corp. has transferred our patent rights to Microfibres in all these cases because Microfibres, being the much larger company, is in a better position to protect these patents internationally.

Additionally, the loden green Saddle-Cloth would be a technical cloth with and without film. These can be made available F.O.B. Belgium or F.O.B. Taiwan.

I look forward to speaking with you soon.

Best Regards,
William J. Squires
Squires Hightech Corp.



[redacted]

**SQUIRES HIGHTECH CORP.**
**433 MEADOW STREET**
**FAIRFIELD, CT 06430**

January 3, 2001

Mr. Jim McCulloch
Microfibres
1 Moshassuck Street
Pawtucket, RI 02860

Dear Jim:

cc Maureen
Jim Folks
Maureen please follow up with Jim + Bill
File Squires

As discussed, in reference to your patent number 5,987,021, I think it would be a missed opportunity not to use it to bring additional business to Microfibres and Squires Hightech. I will forward you a more complete list of potential infringers that I have noted. I think a simple notification letter would be appropriate; however; some may need a little extra attention. Also, we received our notification and intend to respect your patent rights.

The objective from our vantage point is to 1) bring our relationship closer and 2) send a message that if you want to buy flocked fabrics with camouflage prints you have to purchase them from Squires and Microfibres.

By putting these parties on notice we will further fortify our position, as well as yours, in making more public our association. This is the direction we are going and it would legitimize our relationship in reference to these products.

Products not covered by our patents would directly benefit by association, specifically Microlux. Along with the above-mentioned list I will supply further information as well as my perception as to how they are involved with potential infringements.

I look forward to our meeting tomorrow.

Sincerely,

W T Squires

William T. Squires
Vice President

[redacted]

01/03/01 WED 17:08 [TX/RX NO 8013]