UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MICROFIBRES, INC., and, :
HARTFORD FIBRES, LTD., :
Plaintiffs, :
:
v. : CA 04-21 T
:
SQUIRES HIGHTECH CORPORATION, :
Defendant. :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the court are two motions filed by Plaintiff Microfibres, Inc. ("Plaintiff" or "Microfibres"): Motion for Hearing on Assessment of Damages (Document ("Doc.") #7) ("Motion for Damages Hearing") and Motion for Entry of Judgment (Doc. #10) ("Motion for Judgment") (collectively the "Motions"). Microfibres seeks the entry of judgment by default in the amount of $429,892.73 against Defendant Squires Hightech Corporation ("Defendant" or "Squires"). See Motion for Judgment.

The Motions have been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and D.R.I. Local R. 32(c). The court conducted a damages hearing on April 14, 2005, and a hearing on the Motion for Judgment on October 3, 2005. For the reasons stated below, I recommend that the Motions be granted.

**I. Facts[1] and Travel**

[1] Because default has entered against Defendant Squires Hightech Corporation ("Defendant" or "Squires"), see Clerk's Entry of Default (Document ("Doc.") #4), the factual allegations of the Complaint are taken as true, see Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002)("A defaulting party is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.")(internal quotation marks and citation omitted); Brockton Sav. Bank v. Peat,

Microfibres is a Rhode Island corporation with a principal place of business in Pawtucket, Rhode Island. See Complaint ¶ 1. Hartford Fibres, Ltd. ("Hartford"), located in Kingston, Ontario, Canada, is a wholly owned subsidiary of Microfibres. See id. Squires is incorporated in and has a principal place of business in a state other than Rhode Island. See id. ¶ 2.

Microfibres and Hartford produce fibres and other materials used in textile products. See id. ¶ 4. Squires produces and sells textile products. See id. During 2001 and 2002, Squires ordered approximately $367,000 worth of goods from Microfibres and Hartford, all of which were accepted by Squires. See id. ¶ 5. Microfibres and Hartford billed Squires for these goods. See id. However, despite repeated demands, Squires has failed and refused to pay for the $367,000 worth of goods sold and delivered to it by Microfibres and Hartford. See id. ¶ 6.

Microfibres and Hartford filed a Complaint in this court on January 27, 2004. See Complaint (Doc. #1). They allege that a contract was formed each time Microfibres or Hartford produced goods in response to an order from Squires and that Squires breached these contracts, which required Squires to pay for the goods for which it contracted, by failing to pay for such goods, see id. ¶ 8; that Squires owes Microfibres approximately $367,000 on book account and has failed and refused to pay this amount, see id. ¶ 10; and that because Microfibres and Hartford have sold and delivered goods to Squires, for which Squires has failed to pay, Squires has obtained goods at the expense of Microfibres and Hartford and it would be unjust to permit Squires to retain such goods without compensating them, see id. ¶ 12.

---

Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985)("[T]here is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its ... claims must be considered established as a matter of law.").

The Complaint and Summons were personally served on Richard N. Petrucci, Esq., agent for service for Squires, on February 5, 2004, at 1200 Summer Street, Stamford, Connecticut. See Return of Service (Doc. #2). On June 15, 2004, Microfibres filed a Notice for Entry of Default, stating that Squires had been served with a copy of the Complaint on January 5,[2] 2004, and had filed no response. See Notice for Entry of Default (Doc. #3). Default was entered on June 16, 2004. See Document #4. On February 15, 2005, Plaintiffs were ordered to show cause, in writing, why the matter should not be dismissed for lack of prosecution. See Show Cause Order (Doc. #5). Microfibres on March 11, 2005, filed its Response to Show Cause Order, stating that it had been unable to locate Squires or ascertain whether Squires had any assets. See Response to Show Cause Order (Doc. #6) at 1. Microfibres noted that there was no telephone listing for Squires in Fairfield, Connecticut, where it was formerly located, and that it had not filed an annual report with the State of Connecticut since 2001 and did not appear to be in good standing with the office of the Secretary of State. See id. Microfibres also filed on March 11, 2005, a Motion for Hearing on Assessment of Damages ("Motion for Hearing"). See Motion for Hearing (Doc. #7).

The court conducted a hearing on April 14, 2005. The court noted that no motion for entry of default judgment had been filed and questioned Microfibres' counsel about the fact that he was seeking a damages hearing before default judgment had been granted. See Tape of April 14, 2005, hearing. The court stated that it would proceed with the damages hearing and thereafter hold the matter until counsel filed a motion for entry of default

---

[2] Clearly, the January 5, 2004, date is erroneous as the Complaint was not filed with the court until January 27, 2004. See Complaint (Doc. #1); see also Return of Service (Doc. #2)(indicating that the Complaint was served on Squires' agent on February 5, 2004).

judgment. See id. The court also instructed counsel to provide sufficient information to enable the court to determine whether it possessed personal jurisdiction over Squires. See id.

The damages hearing then proceeded. Microfibres called Deborah Desrosiers, senior corporate financial analyst for Microfibres. See id. She stated that she has responsibility for accounts receivable and international credit and collections and that her duties also include accounts receivable for Hartford. See id. Exhibit A, consisting of two pages, was introduced into evidence after Ms. Desrosiers testified that it was kept in the ordinary course of business, that it was kept under her supervision, and that the entries on the documents were made at the time indicated for those entries. See id. Referring to page one, Ms. Desrosiers testified that the total amount owed by Squires to Hartford for goods sold and interest owed for failing to pay for said goods was $22,812.78. See id. Turning to page two, she testified that the total amount owed to Microfibres for goods sold and interest was $407,079.95. See id. Thus, the grand total owed by Squires to Hartford and Microfibres was $429,892.73. See id.

Microfibres filed the instant Motion for Judgment on August 26, 2005, along with the Declaration of James Fulks ("Fulks Decl."), the executive vice president of Microfibres. See Motion for Judgment (Doc. #10); Fulks Decl. (Doc. #11) ¶ 1. The court conducted a hearing on the Motion for Judgment on October 3, 2005, and thereafter took the matter under advisement.

**II. Jurisdiction**

When judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to assure itself that it has jurisdiction over both the subject matter and the parties. See Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy, 242 F.3d 322, 324 (5th Cir. 2001); In re

Tuli, 172 F.3d 707, 712 (9th Cir. 1999); Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 772 (10th Cir. 1997); Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986); see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)("To hear a case, a court must have personal jurisdiction over the parties, 'that is, the power to require the parties to obey its decision.'")(quoting United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 35 (1st Cir. 1999)); Letelier v. Republic of Chile, 488 F. Supp. 665, 668 (D.D.C. 1980)(holding that issue of subject matter jurisdiction should be fully explored despite previous entry of default); cf. Hugel v. McNell, 886 F.2d 1, 3 n.3 (1st Cir. 1989)("[W]here the court rendering the default judgment is shown to lack personal jurisdiction over the defendant, ... the judgment may be vacated and set aside by the rendering court on motion, or by another court on collateral attack.")(quoting 6 Moore's Federal Practice para. 55.09)(second alteration in original). Accordingly, this court examines both subject matter and personal jurisdiction.

**A. Subject Matter Jurisdiction**

Plaintiff states that the court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[3] See Complaint ¶ 3.

---

[3] Title 28, United States Code ("U.S.C."), section 1332 provides, in relevant part:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-
> (1) citizens of different States;
> (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
> (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332.

Microfibres alleges that it is a Rhode Island corporation with a principal place of business in Pawtucket, Rhode Island, that Hartford is a wholly owned subsidiary of Microfibres located in Kingston, Ontario, Canada, and that, on information and belief, Squires is incorporated in and has a principal place of business in a state other than Rhode Island. See Complaint ¶¶ 1-2. Microfibres additionally alleges that Squires owes it $367,000 for goods sold and delivered to it by Microfibres and for which Squires has not paid. See id. ¶¶ 5-6, 10. Because default has already entered against Squires, see Document #4, the factual allegations of the Complaint must be taken as true. See Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985)("[T]here is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its ... claims must be considered established as a matter of law."). Accordingly, I find that subject matter jurisdiction exists.

**B. Personal Jurisdiction**

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (internal quotation marks omitted). "A district court may exercise authority over a defendant by virtue of either general or specific [personal] jurisdiction." Id. (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n, 142 F.3d 26, 34 (1st Cir. 1998))(alteration in original).

**1. General Jurisdiction**

"General jurisdiction exists when the defendant has engaged in 'continuous and systematic activity' in the forum, even if the activity is unrelated to the suit." Id. (quoting United Elec.,

Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir.1992)). The general jurisdiction standard is considerably more stringent than the standard for specific jurisdiction. See Barry v. Mortgage Servicing Acquisition Corp., 909 F.Supp. 65, 74 (D.R.I. 1995). "The continuous and systematic requirement has been characterized as being satisfied when the defendant's forum contacts are extensive and pervasive." Id. at 75 (citation and internal quotation marks omitted). In the instant matter, Microfibres does not appear to contend that general jurisdiction exists. See Memorandum in Support of Motion for Entry of Judgment ("Plaintiff's Mem.") at 1-2; Fulks Decl. ¶¶ 1-12.

**2. Specific Jurisdiction**

Specific jurisdiction applies where "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1088-89. For a court properly to exercise specific personal jurisdiction over the defendant, the requirements of both the state's long-arm statute and the United States Constitution must be satisfied. See Barrett v. Lombardi, 239 F.3d 23, 26 (1st Cir. 2001); Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994). The Rhode Island long-arm statute, as interpreted by the Supreme Court of Rhode Island, is coextensive with federal due process mandates. See Levinger v. Matthew Stuart & Co., Inc., 676 F.Supp. 437, 439 (D.R.I. 1988)(citing Conn v. ITT Aetna Fin. Co., 252 A.2d 184, 186 (R.I. 1969)); see also Brian Jackson & Co. v. Eximias Pharm. Corp., 248 F.Supp.2d 31, 34-35 (D.R.I. 2003); Microfibres, Inc. v. McDevitt-Askew, 20 F.Supp.2d 316, 320 (D.R.I. 1998). Therefore, Fourteenth Amendment due process requirements determine the exercise of personal jurisdiction in the District of Rhode Island. See Levinger, 676 F.Supp. at 439; Northeastern Land Servs., Ltd. v. Schulke, 988 F.Supp. 54, 57

(D.R.I. 1997); see also Hainey v. World AM Communications, Inc., 263 F.Supp.2d 338, 341 (D.R.I. 2003).

"Due process demands minimum contacts between a nonresident defendant and the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Northeastern Land Servs., Ltd., 988 F.Supp. at 57 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). "[F]or purposes of specific jurisdiction, contacts should be judged when the cause of action arose, regardless of a later lessening or withdrawal." Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d 59, 66 (1st Cir. 2002).

The First Circuit applies a three-part analysis in evaluating minimum contacts. See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999); Sawtelle v. Farrell, 70 F.3d 1381, 1388-89 (1st Cir. 1995).

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Sawtelle, 70 F.3d at 1389 (quoting United Elec., Radio & Mach. Workers of Am., 960 F.2d at 1089). The Gestalt factors are: "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies," id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105

S.Ct. 2174, 2184-85, 85 L.Ed.2d 528 (1985)).

**a. Relatedness**

The first of the three requirements for specific jurisdiction centers "on the causal nexus between [the defendant's] forum-based contacts and the harm underlying [the plaintiff's] complaint." Northeastern Land Servs., Ltd. v. Schulke, 988 F.Supp. 54, 57-58 (D.R.I. 1997); see also Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994)(same). Here the harm alleged is that Squires has breached a series of contracts with Microfibres by failing to pay for goods which Squires ordered from Microfibres during 2001 and 2002 and which were delivered by Microfibres to Squires. See Complaint ¶¶ 5-6, 8, 10, 12; Fulks Decl. ¶ 2. Microfibres must show a sufficient "causal nexus" between Squires' contacts with Rhode Island and Plaintiff's cause of action. See Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 7 (1st Cir. 2002) (stating that for its tort claims plaintiff must show a sufficient "causal nexus" between non-resident defendant's contacts with forum state and plaintiff's tort claims); id. at 10 (stating same requirement for plaintiff's breach of contract claim).

"[T]he mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 290 (1st Cir. 1999)(citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985)).

> [A] contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors--**prior negotiations and contemplated future consequences, along**

> **with the terms of the contract and the parties' actual course of dealing--that must be evaluated** in determining whether the defendant purposefully established minimum contacts within the forum.

Burger King Corp., 471 U.S. at 479, 105 S.Ct. at 2185 (internal citations and quotation marks omitted)(emphasis added); see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The First Circuit has instructed that "[i]n contract cases, a court charged with determining the existence *vel non* of personal jurisdiction must look to the elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." Phillips Exeter Acad., 196 F.3d at 289.

The documents attached to the Fulks Decl. reflect numerous contacts between Squires and the State of Rhode Island. See Fulks Decl. ¶ 2; see also id., Exhibits ("Ex.") A-J. These contacts include three meetings between representatives of Squires and Microfibres held in Rhode Island, see id., Ex. A (memorandum documenting meeting in Rhode Island on August 2, 1999); id., Ex. J (letter documenting meeting in Rhode Island on January 4, 2001); id., Ex. B (memorandum documenting meeting in Rhode Island on September 3, 2002), a phone call from Squires to Microfibres, see id., Ex. C (memorandum documenting phone call on December 3, 2002), four e-mails sent from Squires to Microfibres, see id., Ex. I (e-mail dated September 28, 2001); id., Ex. D (e-mail dated October 10, 2001); id., Ex. H (e-mail dated November 1, 2001); id., Ex. E (e-mail dated June 5, 2003), and two faxes transmitted from Squires to Microfibres, see id., Ex. G (fax transmitted on September 3, 2002); id., Ex. F (fax transmitted on September 6, 2002). The early contacts relate to the formation and/or enhancement of the business relationship. For example,

the purpose of the August 2, 1999, meeting was to "get together to address how we can grow our business together." Id., Ex. A. Similarly, the letter from William T. Squires, vice president of Squires, to Jim McCulloch of Microfibres, which references the January 4, 2001, meeting, reflects a desire to "bring our relationship closer" and to "mak[e] more public our association." Id., Ex. J. Exhibit D, an e-mail from William J. Squires, president of Squires, includes as an attachment a draft of a proposed sales agreement between Microfibres and Squires. See id., Ex. D. The November 1, 2001, e-mail refers to a "license agreement." Id., Ex. H. The later contacts appear to relate to attempts to work out Squires' outstanding debt to Microfibres. See id., Ex. B (documenting meeting during which Squires agreed to pay "$150-200,000 of the outstanding balance owed within the next ninety (90) days"); id., Ex. C (reflecting phone conversation pertaining to Squires' "commitments ... to Microfibres to pay down the outstanding receivable"); id., Ex. E (referring to a proposed "license partnership" as a way to secure Microfibres' interests); see also id., Ex. F (financial information); id., Ex. C, G (reflecting Squires' attempt to obtain third party financing). Based on this evidence, the court has no difficulty concluding that "the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach," Phillips Exeter Acad., 196 F.3d at 289; see also Burger King Corp., 471 U.S. at 479, 105 S.Ct. at 2185 ("It is these factors--prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing--that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.")(internal citations and quotation marks omitted).

**b. Purposeful Availment**

The second component of the three part test, purposeful availment, serves "to assure that personal jurisdiction is not premised solely upon a defendant's 'random, isolated, or fortuitous' contacts with the forum state." Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995)(quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (explaining that defendant's contacts must qualify as "invoking the benefits and protections of [the forum state's] laws"). The goal is to identify in-state activity "that would make the exercise of jurisdiction fair, just, or reasonable." Rush v. Savchuk, 444 U.S. 320, 329, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980). The kind of purposeful availment necessary in the First Circuit requires in-state conduct by the defendant which is both **voluntary** and which makes it reasonably **foreseeable** that the defendant might be sued in the forum. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994). Furthermore, the voluntariness and foreseeability of the defendant's contacts depend on whether the defendant participated in the economic life of the forum and not just on the fact that the defendant formed a contract with the resident plaintiff. See Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc., 764 F.2d 928, 933 (1st Cir. 1985) (quoting Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1084 (1st Cir. 1973)); cf. McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)(holding it sufficient for purposes of due process that the defendant had participated in the economic life of the state and the contract had a substantial connection with the state).

**i. Voluntariness**

It is clear that Squires voluntarily entered into the

relationship with Microfibres and that the relationship resulted in the sale of goods to Squires. However, this fact will not by itself satisfy the purposeful availment prong. See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 292 (1st Cir. 1999)("Without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship--say by solicitation, see, e.g., Nowak, 94 F.3d at 716-17--the mere fact that the defendant willingly entered into a tendered relationship does not carry the day."); Northeastern Land Servs., Ltd. v. Schulke, 988 F.Supp. 54, 58 (D.R.I. 1997). Here, it appears that Squires reached out to Microfibres. The three meetings documented in the exhibits to the Fulks Decl. occurred in Rhode Island. See Fulks Decl., ¶¶ 3-4, 12; id., Ex. A, B, J. The memorandum preceding the August 2, 1999, meeting, states that "Squires seems intent, for whatever reasons, on moving more of their business to us." Id., Ex. A. In addition, the January 3, 2001, letter from William T. Squires to Jim McCulloch, anticipating the January 4th meeting, reflects a desire to enhance the business relationship between the two companies. See id., Ex. J. Thus, there is evidence of "a voluntary decision by the defendant to inject itself into the local economy as a market participant." Brian Jackson & Co. v. Eximias Pharm. Co., 248 F.Supp.2d 31, 35-36 (D.R.I. 2003). I therefore find that Squires reached out to Rhode Island and solicited Microfibres' business and that the requirement of voluntariness is satisfied.

**ii. Foreseeability**

The foreseeability component of purposeful availment requires that defendants have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)(citing Shaffer v.

Heitner, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977)(Stevens, J., concurring in judgment))(alteration in original). When a defendant intentionally directs activities at the forum state which relate to the alleged claims, there is such fair warning. See id. (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)). Here, the activities which Squires intentionally directed toward Rhode Island, soliciting Microfibres' business, ordering goods from Microfibres, and attempting to resolve the outstanding balance owed to Microfibres, gave Squires such fair warning.

In sum, I find that it was foreseeable that Squires, by voluntarily availing itself of the benefits of Rhode Island law and by reaching out to Microfibres, could be haled into court in Rhode Island. Accordingly, I find that the element of purposeful availment is satisfied.

**c. Gestalt Factors**

The third prong of the personal jurisdiction analysis, the Gestalt factors, arises after the establishment of minimum contacts and centers on whether the exercise of jurisdiction is reasonable. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Reasonableness equates with "fair play and substantial justice." Id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). As the court has concluded that the elements of relatedness and purposeful availment of the test for specific jurisdiction have been satisfied, discussion of the Gestalt factors is necessary. Cf. United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080, 1091 n.11 (1st Cir. 1992)("The Gestalt factors come into play only if the first two segments of the test for specific

jurisdiction have been fulfilled."); see also Sawtelle v. Farrell, 70 F.3d 1381, 1394 (1st Cir. 1995)("[A] failure to demonstrate the necessary minimum contacts eliminates the need even to reach the issue of reasonableness ....").

This third portion of the jurisdictional test is not inflexible and varies in accordance with the strength of the first two parts. That is, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994). On the other hand, "an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." Id.

**i. Defendant's Appearance Burden**

In terms of the burden of defending this suit in Rhode Island, "this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Squires is, or was, located in Connecticut. See Fulks Decl., Ex. F, G (including a Fairfield, Connecticut, address for Squires); Response to Show Cause Order (Doc. #6) at 1 (stating that Squires was formerly located in Fairfield, Connecticut). Its agents have appeared in Rhode Island on at least three occasions, See Fulks Decl. ¶¶ 3-4, 12; id., Ex. A, B, J. I do not find that Squires' burden of appearing is special or unusual. Therefore, this factor is not meaningful.[4]

**ii. Forum State's Interest**

In determining Rhode Island's interest in adjudication, this court should assess its legitimacy and "not ... *compare* [its]

---

[4] Given that Squires has failed to answer or otherwise defend in this action, consideration of this factor may be academic for practical purposes.

interest to that of some other jurisdiction ...." Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 151 (1st Cir. 1995) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 483 n.26, 105 S.Ct. 2174, 2188 n.26, 85 L.Ed.2d 528 (1985), for the proposition that two forums may simultaneously have legitimate interests in the dispute's resolution). Here Rhode Island has an interest in seeing that a forum is provided to a Rhode Island company, Microfibres, which produced and sold goods to an out of state defendant, Squires, and has not received its due compensation for those goods.

**iii. Plaintiff's Interest in Relief**

The third factor obviously weighs in favor of Microfibres and Hartford. The aim is to ensure that a plaintiff is able to obtain "convenient and effective relief." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). To achieve this end, a court must generally "accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Id. (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994)). Microfibres is a Rhode Island corporation. It filed this action in the District of Rhode Island. See Complaint ¶ 1. It is clear that it is more convenient for Microfibres to litigate this action in Rhode Island than in Connecticut.

**iv. Judicial System's Interest**

The key to applying this factor is ensuring "the most effective resolution of the controversy." Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995). The court finds that the contracts were formed in Rhode Island when Squires placed its orders for goods from Microfibres. Accordingly, I find that Rhode Island law governs the action and that Rhode Island provides the best forum for resolution of the dispute between Squires and Microfibres.

**v. States' Common Interest**

There are only two states with any arguable interest in this controversy: Rhode Island and Connecticut. Rhode Island has the greatest connection with the dispute. As a fundamental social policy, it is desirable that the court which is most concerned with a controversy (i.e., one where the alleged wrongdoing has occurred within its jurisdiction) should adjudicate the dispute. Here, the contracts were made in Rhode Island when Squires ordered goods from Microfibres which Microfibres then produced and delivered. See Complaint ¶¶ 5, 8, 12. The breach of contract occurred when Squires failed to pay Microfibres in Rhode Island for the goods. See id. ¶¶ 6, 8, 10, 12. Thus, Rhode Island has the largest interest in this matter.

**vi. Summary Re Gestalt Factors**

It is apparent that the Gestalt factors favor the exercise of jurisdiction by this court. Accordingly, I find that this court's exercise of jurisdiction over Squires is reasonable.

**d. Summary Re All Factors**

The court finds that all three prongs of the tripartite test for the exercise of specific personal jurisdiction, relatedness, purposeful availment, and reasonableness, are satisfied. See United States v. Swiss American Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001). Accordingly, the court has personal jurisdiction over Squires.

**C. Service of Process**

"It is axiomatic that service of process must be effective under the Federal Rules of Civil Procedure before a default or a default judgment may be entered against a defendant." Maryland State Firemen's Ass'n v. Chaves, 166 F.R.D. 353, 354 (D. Md. 1996); see also Griffin v. Foti, No. Civ.A. 03-1274, 2003 WL 22836493, at *1 (E.D. La. Nov. 24, 2003)(holding that entry of default judgment against defendant who has never been served is

not appropriate); Perafan-Homen v. Hasty, No. 00 Civ. 3883(RWS), 2000 WL 1425048, at *1-2 (S.D.N.Y. Sept. 26, 2000)(denying motion for default judgment because only proper defendant was never served); Fed. R. Civ. P. 55(a)(providing for entry of default where party "fail[s] to plead or otherwise defend as provided by these rules ..."); Fed. R. Civ. P. 12(a)(1)(A)(requiring defendant to serve answer "within 20 days **after being served with the summons and complaint** ...")(emphasis added). "Before a default can be entered, the court must have jurisdiction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process." 10A Charles Alan Wright et al., Federal Practice and Procedure § 2682 (3d ed. 1998)(footnote omitted).

Fed. R. Civ. P. 4(h) governs service of process upon corporations. It provides, in relevant part, that service upon a corporation (from which a waiver of service has not been obtained and filed) shall be effected:

> by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant ....

Fed. R. Civ. P. 4(h)(1). Alternatively, service may be effected "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State ...." Fed. R. Civ. P. 4(e)(1) (to which Fed. R. Civ. P. 4(h)(1) refers). Rhode Island Superior Court Rule of Civil Procedure 4(f) provides in relevant part:

> (f) Service Outside State Within the United States; Personal Jurisdiction. **When** an individual or **a foreign corporation is subject to the jurisdiction of the courts of the state,** service of process may be made outside the

state as follows:

> ....
>
> (2) Upon a foreign corporation **by delivery of a copy of the summons and complaint by any disinterested person** to the president, secretary, or treasurer of such corporation or **to any agent or attorney for service of process designated by the corporation in the state of incorporation**, or by mailing a copy of the summons and complaint to any such officer or agent or to the corporation at its business address designated in the state of incorporation by registered or certified mail, return receipt requested, or by any other method ordered by the court to give such corporation notice of the action and sufficient time to prepare any defense thereto.

R.I. Super. Ct. R. Civ. P. 4(f) (emphasis added). The court has already determined that it has personal jurisdiction over Squires. Thus, Squires may be served in accordance with the provisions of the above rule. The Return of Service indicates that service was effectuated on Squires by delivery of a copy of the Complaint and Summons to Richard N. Petrucci, Esq., agent for service for Squires, personally on February 5, 2004, at 1200 Summer Street, Stamford, Connecticut. See Return of Service (Doc. #2). Based on the foregoing, I find that the court has personal jurisdiction over Squires.

**III. Judgment**

As previously noted, for purposes of the instant motion, the default has established the truth of Microfibres' allegations. See n.1. The court, having both subject matter jurisdiction and personal jurisdiction over Squires and the allegations of the Complaint having been established, concludes that the Motion for Judgment should be granted. I further find that the Motion for Damages Hearing should be granted and that Microfibres has established, through evidence presented at the damages hearing,

damages totaling $429,892.73. I therefore recommend that judgment in the amount of $429,892.73 enter against Squires.

**IV. Conclusion**

For the reasons stated above, I recommend that the Motion for Damages Hearing be granted, that damages be assessed against Squires in the amount of $429,892.73, and that Motion for Judgment against Squires in that amount of be granted. Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

David L Martin

DAVID L. MARTIN
United States Magistrate Judge
January 13, 2006

Accepted in the absence of an objection.
Ernest C Torres
Ernest C. Torres
Chief, US District Judge
Date: 2/2/06